# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| CHARLES W. ELDRIDGE, | |
| Petitioner, | |
| VS. | NO. 5:07-CV-464 (WLS) |
| DARRELL HART, | |
| Respondent. | Proceedings Under 28 U.S.C. §2254<br>Before the U.S. Magistrate Judge |

## RECOMMENDATION TO DENY RELIEF

Before the court is Charles W. Eldridge's amended petition seeking habeas corpus relief pursuant to the provisions of 28 U.S.C. §2254. Tab #1, and Tab #12. Respondent Darrell Hart has filed a response to the petitioner's claims as well as a brief and numerous exhibits in support thereof. Tab #15 and Tab #16. The instant petition is ripe for review.

## PROCEDURAL HISTORY

Petitioner Charles Eldridge was indicted by a Peach County, Georgia grand jury on November 6, 2003, for two counts of aggravated assault. On December 5, 2003, a jury found the petitioner guilty of both counts. Thereafter, the petitioner was sentenced to twenty (20) years on each count, to be served concurrently.

The petitioner filed a notice of appeal on March 28, 2004. Therein, the petitioner raised the following four (4) enumerations of error: 1) the trial court erred by failing to suppress evidence of a firearm, his vehicle, and his statement to police; 2) the trial court erred by failing to give his request to charge on identification; 3) the trial court erred by failing to give his request to charge on alibi; and 4) the evidence presented at trial was not sufficient to support the verdict. On October 14, 2004, the petitioner's convictions and sentences were affirmed. Eldridge v. State, 270 Ga. App. 84, 606 S.E.2d 95 (2004).

On December 28, 2004, the petitioner filed a state habeas corpus petition in the Superior Court of Tattnall County, Georgia. Eldridge v. Terry, No. 2004-HC-88 (Tattnall Super. Ct. Feb. 13, 2006)(unpublished). Therein, the petitioner raised the following four (4) grounds: 1) ineffective assistance of trial counsel in that counsel, knowing that the petitioner would not testify, told the jury that the petitioner would testify; 2) ineffective assistance of trial counsel in that counsel did not move for a directed verdict; 3) ineffective assistance of appellate counsel in that counsel did not raise on appeal the trial court's error in not giving a jury instruction on identification; and, 4) ineffective assistance of appellate counsel in that counsel did not challenge on appeal the sufficiency of the evidence. The state habeas corpus court denied relief in an order filed February 13, 2006. On January 8, 2007, the Georgia Supreme Court denied the petitioner's subsequently filed application for certificate of probable cause to appeal.

On May 15, 2006, the petitioner filed a second state habeas corpus petition in the Superior Court of Tattnall County, Georgia. Eldridge v. Terry, No. 2006-HC-31. Therein, the petitioner raised the following six (6) grounds: 1) ineffective assistance of counsel by informing the jury during opening statements that petitioner would be testifying; 2) ineffective assistance of counsel for failure to hire a ballistics expert to refute the state's witness; 3) ineffective assistance of counsel for failing to object to State's exhibits 2 and 3; 4) ineffective assistance of counsel for failing to request a written charge on mere presence, grave suspicion, impeachment by lack of opportunity and inconsistency; 5) ineffective assistance of counsel for failing to raise on appeal the trial court's improper jury instruction on aggravated assault; and 6) ineffective assistance of counsel by failing to make a timely objection to perjured testimony from state's witness Jackson.

On May 26, 2006, the petitioner amended his second state petition by adding the following four (4) grounds: 1) ineffective assistance of counsel in that counsel did not challenge the indictment and did not challenge the trial court's jury instruction on aggravated assault; 2) the indictment was

defective; 3) the indictment was fundamentally flawed in that it did not allege that the petitioner used the weapon by shooting, pointing, striking, or waving it in a threatening manner; and 4) ineffective assistance of counsel in that counsel did not file a demurrer to the indictment. In an order filed February 14, 2008, the petitioner's second state habeas petition was dismissed as successive. Eldridge v. Brown, No. 2006-HC-31 (Tattnall Super. Ct. Feb. 14, 2008)(unpublished).

On December 3, 2007, during the pendency of his second state habeas corpus petition, the petitioner executed the instant federal petition. Therein, the petitioner raised the following grounds for relief: 1) the trial court erred in not granting his motion to suppress; 2) the trial court erred in not giving a charge on alibi to the jury; 3) the trial court erred in not giving a charge on identification to the jury; 4) the evidence was insufficient to support the verdict; 5) the trial court erred in allowing a statement he made to his parole officer to be introduced at trial; 6) the trial court erred by failing to advise him of his right to have new counsel on appeal; 7) ineffective assistance of counsel in that his counsel did not explain to that he had a right to have new counsel on appeal; 8) ineffective assistance of counsel in that "no professional experience skilled attorney is not in reason to move and file a[n] ineffective assistance claim against himself for any purposes;" 9) ineffective assistance of counsel in that his counsel told him that he was acting in his best interest, but was instead representing him on appeal to "clean up his mistakes during trial or the other proceedings;" 10) ineffective assistance of counsel in that his counsel failed to did not protect his due process rights by allowing the case to proceed to the grand jury while still in the jurisdiction of the "commitment court."

On January 16, 2008, the petitioner amended his federal petition by adding the following four (4) grounds: 1) the trial court committed plain error by failing to appoint new counsel for his direct appeal; 2) ineffective assistance of counsel in that counsel did not request funds for an expert

witness, an independent investigator, or a crime scene reconstructionist; 3) ineffective assistance of counsel in that his counsel did not subpoena "the clerk from the store/gas station, Ms. Betty Willis;" and 4) ineffective assistance of counsel in that counsel did not develop his alibi defense. Soon thereafter, and as was noted above, the respondent filed his response, a supporting brief, and several exhibits.

STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering the instant petition, the facts as found by the Georgia Court of Appeals on direct appeal of the petitioner's criminal case are adopted by this court. These facts are as follows:

> Taffee Lashonda Wright testified that around 6:30 a.m. on September 1, 2003, she was traveling down Highway 49 toward Fort Valley with her eight-year-old daughter, who was in the back seat, when she noticed a car pull alongside her. Wright heard a "popping" sound, and her daughter started screaming, "Fire, fire, I'm burning, I'm burning." Wright looked in her rearview mirror to see what was wrong with her daughter, and noticed the car that had been traveling beside her swerve, straighten up and then start following her. Wright testified that the car would speed up when she sped up, and at one point the hazard lights were turned on. However, a short distance later the car turned off onto another road, and Wright was able to look at her child and saw that there was blood on her back. It was later determined that the child had been shot, and bullet fragments were recovered from her clothes.

> Jackie Cooper, the Chief of Police for the City of Roberta testified that on September 1, 2003, shortly after 7:00 a.m., he received a call concerning a suspicious person at Haddock's Grocery store. When Cooper arrived at Haddock's, he observed a 1997 Oldsmobile sitting at the gas pump. Cooper asked the driver of the car, who he identified at trial as the defendant Charles Eldridge, for his driver's license and insurance information. The driver's license and insurance were valid, but Cooper noticed the car did not have a vehicle tag. Eldridge told Cooper that the tag had been lost but provided him with a tag number. Cooper allowed Eldridge to leave, and then called in the tag number. The tag came back as belonging to another vehicle, so Cooper proceeded to drive in the direction he observed Eldridge go in an attempt to intercept him. A short while later, Cooper saw the car Eldridge had been driving on the side of the road. The car door was open, and Eldridge was standing in front of the car. Cooper stopped and got out of his car and began walking toward Eldridge. As he passed Eldridge's open car door, he observed a silver semiautomatic weapon

between the seat and the driver's door. Eldridge told Cooper the gun belonged to his wife, and Cooper picked it up for his safety while he was questioning Eldridge. Eldridge told Cooper he was sleepy from driving all night, and that was why he gave him the wrong tag number.

Deputy Tisdale from the Crawford County Sheriff's Office arrived and took over the investigation. Tisdale testified he had received a call from another county concerning a drive-by shooting involving a four-door Oldsmobile car. Tisdale testified he went to the scene where Eldridge was stopped on the side of the road after hearing a call from Cooper describing Eldridge's vehicle.

Cooper turned over the gun he recovered from Eldridge's vehicle to Tisdale, and the gun and bullet fragments recovered from the victim's clothes and the vehicle in which she was riding were sent to the State Crime lab for analysis. Melba Deveaux, a firearms examiner with the State of Georgia Bureau of Investigation Crime Laboratory, testified that one of the bullets tested was "more likely than not" fired from the gun recovered from Eldridge, and that she was able to make a "100 percent" identification that another bullet recovered from the scene had been fired from that gun.

Eldridge, 270 Ga. App. at 84-85.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a review of the record in this case, and in light of the above fact statement, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of 28 U.S.C. § 2254(d), this court is prohibited from granting relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Williams v. Taylor, 529 U.S. 362, 402-13 (2000).

A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. Moreover, when a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

## DISCUSSION

### Ground One

In ground one of his original federal petition, petitioner Eldridge contends that the trial court erred by failing to suppress evidence of his firearm, his vehicle, and his statement to the police. In support, he claims that the evidence was obtained as the result of an illegal stop. As noted above, the petitioner raised this ground in his direct appeal.

After considering this ground, the Georgia Court of Appeals found that the trial court's decision to allow this evidence was proper. In pertinent part, and in support of this conclusion, the state appellate court held that:

> The evidence at the motion to suppress hearing, including Eldridge's own testimony, as well as the evidence at trial, showed that Eldridge was already stopped on the side of the road when he was approached the second time by Officer Cooper. Thus, as the trial court held, there was no stop in this case, as Eldridge was already sitting on the side of the road when Cooper saw him. Moreover, Cooper had a right to question Eldridge concerning the incorrect tag number, and after Cooper saw the gun in plain view in the car he had a right to retrieve it for his own safety. "'A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. And where such a plain-view seizure takes place, there is in effect no search at all.' (Citations and punctuation omitted.) Massengale v. State, 189 Ga. App. 877, 879(3), 377 S.E2d 882 (1998)." Clark v. State, 235 Ga. App. 569, 574 (2)(c), 510 S.E.2d 319 (1998). Lastly, although Eldridge complains his statement to Tisdale that he was a convicted felon should have also been suppressed, the trial transcript shows that neither this statement nor the fact that Eldridge was initially arrested on charges of possession of a firearm by a convicted felon was admitted into evidence at trial.

Eldridge, 270 Ga. App. at 86.

In light of the above, the respondent argues that the state courts' treatment of this claim was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, the respondent concludes that this ground must fail. The undersigned agrees.

## Grounds Two and Three

In ground two of his original federal petition, the petitioner alleges that the trial court erred by refusing to give a charge on alibi to the jury. In ground three of his original federal petition, he alleges that the trial court erred by refusing to give a charge on identification to the jury. The petitioner raised these grounds in his direct appeal. Having reviewed these assertions, the Georgia Court of Appeals determined that the trial court's refusal to give these charges was proper. In support of this conclusion, the state appellate court observed that "there was no identification testimony [introduced] in this case and, [as such] the evidence did not warrant a charge on

identification." Eldridge, 270 Ga. App. at 86-87. Furthermore, and in like manner, the appellate court also observed that because "no alibi testimony or evidence which would negate the possibility of Eldridge being at the scene of the shooting was presented . . . the trial court did not err in refusing to give Eldridge's requested alibi charge." Id. In view of the above, and in the absence of any showing by the petitioner that the decision was contrary to or an unreasonable application of clearly established federal law, the undersigned is convinced that these claims must also fail.

## Ground Four

In ground four of his original federal petition, the petitioner contends that the evidence adduced at trial was not sufficient to support the verdict. The petitioner raised this claim in his direct appeal. On direct appeal, the state appellate court determined that this claim lacked merit. The undersigned agrees.

The controlling Supreme Court precedent used to analyze such a claim is set out in the case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (overruled on other grounds by Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). In Jackson, the Supreme Court held that, in the context of a state prisoner's habeas challenge to the sufficiency of the evidence to support his conviction, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 318-19.

In its analysis of this claim, The Georgia Court of Appeals cited to and properly applied the Jackson standard. Consequently, the state court's analysis of the claim was not contrary to nor an unreasonable application of clearly established federal law. Accordingly, and pursuant to the provisions of 28 U.S.C. § 2254(d), this ground must also fail.

Ground Five

In ground five of his original federal petition, the petitioner alleges the trial court erred in allowing a statement that he made to his parole officers to be introduced at trial. The petitioner raised this claim on in his direct appeal. Upon review of this claim, the Georgia Court of Appeals concluded that the trial court's decision to allow the petitioner's statement to be admitted was proper. Eldridge, 270 Ga. App. at 86. In support of this determination, the state appellate court explained that:

> Although Eldridge did not testify at trial, he contends that the trial court erred in ruling that his statement to his parole officers, which was given without Miranda warnings, could be introduced into evidence as impeachment evidence if in fact he did testify and denied that he fired a shot from his gun. Contrary to Eldridge's argument on appeal, the record is somewhat unclear concerning whether the trial court made that specific ruling. Moreover, a prior inconsistent statement is admissible for impeachment purposes even if Miranda warnings were not given, although the trial court in this circumstance has a duty to give appropriate limiting instructions. See State v. Byrd, 255 Ga. 665, 341 S.E.2d 455 (1986); Jones v. State, 243 Ga. 820, 826(6), 256 S.E.2d 907 (1979); Cribbs v. State, 204 Ga. App. 109-110, 418 S.E.2d 405 (1992); Tew v. State, 179 Ga. App. 369, 372-373(2), 346 S.E.2d 833 (1986); Graham v. State, 175 Ga. App. 411, 414(5), 333 S.E.2d 664 (1985).

Eldridge, 270 Ga. App. at 86.

Based on the above quotation, the respondent contends that the state appellate court's merits adjudication of the instant claim was clearly not contrary to nor an unreasonable application of clearly established federal law. Accordingly, the respondent argues that this court should defer to the state court's analysis and deny relief on this claim. The undersigned agrees.

Ground Six and Amended Ground One

In ground six of his original federal petition, the petitioner alleges the trial court did not advise him of his right to have new counsel on appeal. In ground one of his amended federal petition, the petitioner alleges the trial court committed plain error by not appointing him new counsel for his direct appeal. The petitioner failed to raise either of these grounds in his direct

-9-

appeal or in his state habeas corpus petitions. For this reason, the only way in which these claims could now be considered on their merits would be upon a showing that a state court judge would find that the claims "could not reasonably have been raised in the original or amended [state habeas] petition." O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998). As no such showing has been made, these claims must fail.

### Ground Seven through Ten and Amended Grounds Three and Four

In grounds seven through ten of his original federal petition, as well as grounds two through four of his amended federal petition, the petitioner alleges ineffective assistance of counsel for a variety of reasons. As was the case with ground six and amended ground one above, the petitioner failed to raise any of these grounds in his direct appeal or in his state habeas corpus petitions. Consequently, and in the absence of any indication that a state court judge would find that the claims could not reasonably have been raised in the original or amended state habeas petition, these claims also fail.

### Amended Ground Two

In ground two of the petitioner's amended federal petition, the petitioner alleges that he received ineffective assistance of counsel in that his counsel did not request funds for an expert witness, an independent investigator, or a crime scene reconstructionist. While the petitioner did not raise this specific claim on direct appeal or in his first state habeas corpus petition, he did make a similar allegation in ground two of his second state habeas petition. There, the petitioner claimed ineffective assistance of counsel in that his counsel failed to hire a ballistics expert to refute the state's witness. Upon review of this ground, the court presiding over the petitioner's second state habeas petition determined that, pursuant to the provisions of O.C.G.A. § 9-14-51, the ground was successive and therefor procedurally barred from further consideration.

In view of this finding, and insofar as federal review of this ground is concerned, the undersigned first notes that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir.2001). That said, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon "adequate and independent" state grounds. Marek v. Singletary, 62 F.3d 1295, 1301 (11th Cir.1995).

In this circuit, a three part test is used to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. See Judd, 250 F.3d at 1313. "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." Id. Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. See id. Third, the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion." Id.

In this case, a review of the record of the petitioner's second state habeas corpus petition demonstrates that the state habeas court expressly and exclusively relied upon the provisions of O.C.G.A. § 9-14-51 in finding the above ground to be procedurally defaulted. As such, it is clear that the state court neither reached the merits of the petitioner's claim nor did it rest its decision on anything other than adequate state law grounds. Accordingly, and in view of the fact that the claim raised in ground two of the petitioner's amended federal petition is essentially the same as that raised in ground two of the petitioner's second state habeas petition, the undersigned concludes that the claim remains procedurally defaulted.

Because the claim is procedurally defaulted, any further consideration of this claim is barred absent a showing of cause for the default and actual prejudice resulting from the alleged constitutional violation(s). See Wainwright v. Sykes, 433 U.S. 72, 84–85, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). To show cause, a petitioner must demonstrate ''some objective factor external to the defense'' that impeded his effort to raise the claim properly in state court. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Should such cause be established, the petitioner must then show that actual prejudice resulted from the alleged constitutional violation. See Sykes, 433 U.S. at 84, 97 S.Ct. at 2505. To establish actual prejudice, a demonstration that ''errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness'' would be necessary. McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir.1992) (per curiam). After a careful review, however, the undersigned is unable to find any arguments proffered by the petitioner that are sufficient to establish either cause or prejudice as defined above. Consequently, and in the absence of any showing of actual, as opposed to legal, innocence, ground two of the petitioner's amended federal petition fails. See Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir.2001).

## CONCLUSION

For the above reasons, IT IS RECOMMENDED that the instant petition seeking relief under the provisions of 28 U.S.C. § 2254 be DENIED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 18th day of November, 2010.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge